IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DARLENE MARTINCAK,**                    Case No. 1:17 CV 2358

    Plaintiff,

    v.                                  Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                    MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Darlene Martincak ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 12). For the reasons stated below, the undersigned affirms the decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed for SSI in June 2014, alleging a disability onset date of January 1, 2013. (Tr. 308-13). Her claims were denied initially and upon reconsideration. (Tr. 242-55). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 256). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on May 5, 2016. (Tr. 157-99). On July 13, 2016, the ALJ found Plaintiff not disabled in a written decision. (Tr. 130-51). The Appeals Council denied Plaintiff's request for review, making the

hearing decision the final decision of the Commissioner. (Tr. 1-6); *see* 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff timely filed the instant action on November 9, 2017. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Born in October 1963 (Tr. 308), Plaintiff was 50 years old on her alleged onset date, and 53 at the time of the hearing (Tr. 149). Plaintiff alleged disability due to a herniated disc, pinched nerve, scoliosis, arthritis, chronic obstructive pulmonary disease, asthma, fibromyalgia, narcolepsy, anxiety, and depression. (Tr. 342). She had a high school education (Tr. 166), and past work as a home health aide (Tr. 167-68). Plaintiff last worked in 2013. (Tr. 168).

At the time of the hearing, Plaintiff lived with her severely ill mother. (Tr. 164). She had a driver's license, and drove short distances, including to the hearing. (Tr. 165).

Plaintiff testified she applied for disability because she was unable to bend over, and her ability to walk had deteriorated. (Tr. 171). Plaintiff had right knee surgery due to a torn meniscus in early 2014, which helped "[f]or a little while". (Tr. 172). Plaintiff also had injections for her left leg and hip pain; when they did not help, she had back surgery in September 2014. (Tr. 173). The surgery helped "[a] little bit", but her hip continued to worsen. *Id.*

Plaintiff also testified to depression beginning in 2006 when her husband passed away. (Tr. 179). She received mediation (Zoloft and Valium) from her primary care provider, Dr. White. (Tr. 179-80). Despite the medication, Plaintiff continued to experience panic attacks approximately four times per week. (Tr. 181).

Plaintiff described difficulties with balance and bending. (Tr. 184). She estimated she could stand for five minutes without losing her balance, and she could not walk for any length of time because her left hip would "lock up". (Tr. 185). She had difficulty sitting because she would

be "consistently repositioning [her]self, [and] moving". *Id.* Plaintiff testified she could not push and pull with her legs and could "a little bit" with her arms. *Id.* She estimated she could lift and carry a half gallon of milk. *Id.* She testifies she could not bend or squat, but could crawl "a little bit". (Tr. 186). Plaintiff required five minutes to go down the seven to nine stairs into her house. *Id.* She could not reach in any direction or pick up small items. (Tr. 186-87).

Plaintiff testified she did not do any household chores. (Tr. 189). She could shop "[f]or a very, very short period of time." *Id.* For entertainment, Plaintiff watched television and read. (Tr. 190).

Relevant Medical Evidence

Plaintiff saw a physical therapist at Cleveland Clinic Rehabilitation and Sports Therapy due to right knee pain in December 2013. (Tr. 756-59). The physical therapist noted Plaintiff had limited range of motion at the ankle and knee, with poor strength and poor mechanics for walking. (Tr. 759). Two visits per week for six weeks were recommended. *Id.*

In January 2014, Plaintiff consulted with surgeon Andrew J. Matko, D.O., for a pre-operative assessment. (Tr. 767-68).

In March 2014, Plaintiff had a cervical spine MRI. (Tr. 466). It revealed advanced cervical spondylosis, with greatest disc space height reduction in C5-6, and C6-7. *Id.* There was a small disc protraction at T7-8 without effect on the thoracic cord, and a small asymmetric disc protraction at L4-5 toward the left, with minimal effect on the left L5 nerve root. (Tr. 466-67).

Later that month, Plaintiff saw Richard White, M.D., reporting back pain, among other things. (Tr. 701). Dr. White assessed back pain and referred Plaintiff to a pain clinic. (Tr. 702). In April, Plaintiff saw Dr. White for high cholesterol. *Id.* He assessed high cholesterol, menopausal and perimenopausal disorder, and narcolepsy. (Tr. 703). In May, Plaintiff returned

to Dr. White, reporting that her right thigh "feels like it caved in" and back pain radiating to her left calf. (Tr. 704). On examination, Dr. White noted a loss of muscle in Plaintiff's right thigh, as well as decreased range of motion, tenderness, pain, and spasm in Plaintiff's lumbar back. *Id.* He assessed acute thigh pain, back pain, and disc herniation; he referred Plaintiff to orthopedic surgery and neurosurgery. *Id.*

Later in May, Plaintiff returned to Dr. White reporting severe back pain radiating down her leg. (Tr. 705). On examination, Plaintiff had decreased range of motion, tenderness, pain and spasm in her lumbar back. *Id.* Dr. White assessed lumbar radicular pain, prescribed medication (Prednisone and Oxycodone), and instructed Plaintiff to follow up with neurosurgery as already scheduled. (Tr. 705-06).

In June 2014, Plaintiff saw Daniel Zanotti, M.D., at the Center for Orthopedics. (Tr. 548). Plaintiff reported left leg pain, numbness, and tingling. *Id.* She reported she had tried injections, which helped, and had seen pain management. *Id.* On examination, Plaintiff had pain in the lower back and left sciatic notch with palpation. (Tr. 549). She had a positive straight leg raise test on the left side, "no hip or knee discomfort with any motion maneuvers", and full leg strength distally. *Id.* Dr. Zanotti assessed a lumbar strain with left-sided radiculitis. *Id.* He noted Plaintiff might benefit from another injection or referral to surgery for sciatic nerve irritation. *Id.*

Later that month, Plaintiff saw Dr. White for swelling in the legs with pain shooting into the left leg. (Tr. 706). Dr. White assessed lumbar radicular pain. (Tr. 707). Plaintiff returned in July 2014, reporting she was seeing pain management, but needed refills on other medication. (Tr. 707).). In August, Dr. White again assessed lumbar radicular pain. (Tr. 709).

In August 2014, Plaintiff had a consultation with Mario Sertich, M.D., at NeuroSpineCare, Inc. (Tr. 487-88). Plaintiff reported back pain since the prior November,

worsening in June. (Tr. 487). On examination, Dr. Sertich noted a "[s]evere limitation of range of motion in the back", and mild weakness of the dorsiflexor on the left compared to the right." *Id.* Plaintiff had positive straight leg raising, and decreased sensation along the L5 distribution. *Id.* Her station, gait, and coordination were within normal limits. (Tr. 488). Dr. Sertich ordered a CT scan, and discussed a microdiskectomy and L4-L5 laminectomy. (Tr. 487).

The CT scan showed mild disc volume loss at L4-5 and L5-S1 where there were also posterior disc protrusions. (Tr. 489). There were "no significant degenerative changes and no significant bony canal or bony foraminal stenosis." *Id.*

In September 2014, Plaintiff underwent an L4-5 microdiskectomy based on a preoperative diagnosis of a herniated disc L4-5 on the left compressing the L5 nerve root. (Tr. 497-98).

In October 2014, Plaintiff returned to Dr. White reporting severe depression. (Tr. 510). Dr. White assessed depression and referred Plaintiff to psychiatry. *Id.* He also assessed back pain and chronic right hip pain, and noted a referral to orthopedic surgery. (Tr. 511).

That same month, Plaintiff underwent a psychiatric consultative examination with James N. Spindler, M.S. (Tr. 500-05). On examination, Dr. Spindler noted Plaintiff's "gait seemed normal", but she reported a poor sense of balance. (Tr. 502). Plaintiff was cooperative, and had no apparent difficulty staying focused. *Id.* She "did not appear to be depressed", though reported some nervousness and depression when arriving for the examination; she also "did not seem stressed or anxious" during the interview. (Tr. 503). Dr. Spindler observed Plaintiff appeared to be "in the low average range of intelligence" and her judgment "seem[ed] reliable for most routine matters." *Id.* Plaintiff made her bed and washed dishes, but her mother did most

household chores. *Id.* Dr. Spindler noted Plaintiff's "only hobbies are exercising and watching television" and that she had one friend with whom she enjoyed talking and visiting. (Tr. 504).

That same month, Plaintiff underwent an internal medicine consultative examination with Hasan Assaf, M.D. (Tr. 514-18). Plaintiff reported lower back pain since 1994; she underwent surgery in September 2014. (Tr. 514). Plaintiff reported her lower back pain continued after the surgery, was present most of the time, and its self-reported intensity was 10/10. *Id.* The pain traveled down her left hip and leg, and caused left leg numbness. *Id.* Her hip pain was worse with standing and walking. *Id.* Plaintiff took pain medication for her back and hip, as well as medication for her depression and anxiety. (Tr. 514-15). Plaintiff cooked two to three times per week; she did not clean or shop due to symptoms. (Tr. 515). Plaintiff dressed daily, and showered three times per week. *Id.* For entertainment, she watched television, listened to the radio, and socialized with friends. (Tr. 516). Dr. Assaf observed Plaintiff was in no acute distress. *Id.* Plaintiff walked slowly with an antalgic gait and declined to walk on her heels or toes due to pain. *Id.* Her ability to squat was limited to thirty degrees; her stance was "abnormal" and she was "bent forward." *Id.* Plaintiff did not use an assistive device; she did not need help changing for the exam, or getting on and off the examination table; she rose from a chair without difficulty. *Id.* Dr. Assaf noted a positive straight leg raising test bilaterally, decreased sensation to light touch in the left leg, and tenderness in the left hip and right knee. (Tr. 517). A right knee x-ray showed no significant abnormality. *Id.* Dr. Assaf noted Plaintiff's prognosis was "[g]uarded." (Tr. 518).

In November 2014, Plaintiff saw Dr. White for gastrointestinal issues. (Tr. 710-11). On musculoskeletal examination, Dr. White noted normal range of motion, no edema, and no tenderness. (Tr. 711). Plaintiff also had normal coordination. *Id.* In December 2014, Plaintiff saw

6

Richard White, M.D. to follow up after a fall with head trauma. (Tr. 737). On examination, Dr. White noted normal range of motion, no edema or tenderness, and normal coordination. *Id.* He assessed a concussion and told Plaintiff to continue with Naprosyn as needed. (Tr. 738).

Later that month, Plaintiff returned to Dr. White for the completion of "disability forms to be filled out". (Tr. 734). Dr. White noted Plaintiff "ha[d] right hip pain and back pain treated by other doctors." *Id.* The review of systems findings were positive for back pain and arthralgias. *Id.* On examination, Dr. White noted Plaintiff had tenderness in her cervical, thoracic, and lumbar back. *Id.* She also had decreased range of motion in her lumbar back. *Id.* Dr. White assessed hyperlipidemia, back pain, excessive sleepiness, and disc herniation. *Id.* He prescribed medication. (Tr. 734-35).

Plaintiff returned to Dr. White in May 2015 for back pain and hypercholesterolemia. (Tr. 731). On musculoskeletal examination, Dr. White noted normal range of motion, as well as no edema or tenderness, and normal coordination. (Tr. 732).

In June 2015, Plaintiff saw Timothy Wagner, D.O., complaining of left eye swelling and pain. (Tr. 726). Dr. Wagner also noted Plaintiff was "[o]verall doing well." *Id.* He assessed periorbital cellulitis of the left eye and prescribed medication. (Tr. 729). Plaintiff returned a little over one week later with continued eye symptoms. (Tr. 721). Dr. Wagner assessed an internal left eye sty, and prescribed medication. (Tr. 724).

In April 2016, Dr. White wrote a letter indicating Plaintiff required a disability parking placard because "[s]he cannot walk 200 feet without stopping to rest." (Tr. 968).[1]

---

1. In her brief, Plaintiff also summarizes additional evidence submitted to the Appeals Council. *See* Doc. 11, at 4 (citing Tr. 10, 13, 22, 49). However, while new evidence may be submitted for consideration to the Appeals Council, "we still review the ALJ's decision, not the denial of review by the appeals council." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). In this case, the Appeals Council reviewed these records and declined Plaintiff's

*Opinion Evidence*

In October 2014, Dr. Spindler opined Plaintiff seemed capable of understanding, remembering, and carrying out instructions. (Tr. 505). He thought she had the mental ability to sustain a working pace and maintain a sufficient level of attention and concentration in most job settings. *Id.* Dr. Spindler also opined Plaintiff would likely respond appropriately to supervision, coworkers, and routine work pressures. *Id.*

That same month, Dr. Assaf opined Plaintiff "should avoid[] exposure to dust and other industrial pollutants." (Tr. 518). He thought Plaintiff had "marked limitations in activities requiring standing, walking, bending, and lifting" and that she should "avoid driving and operating machinery" due to her seizure history. *Id.*

In November 2014, state agency physician Anne Prosperi, D.O., reviewed Plaintiff's records and opined Plaintiff could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds. (Tr. 213). She opined Plaintiff could stand and/or walk for four hours in an eight-hour workday and sit for six hours. *Id*. Dr. Prosperi opined Plaintiff was limited to occasional pushing and pulling with her left lower extremity. (Tr. 213-14). Plaintiff could occasionally climb ramps or stairs, stoop, crouch, or crawl; she could frequently balance or kneel, and never climb ladders, ropes, or scaffolds. (Tr. 214). Dr. Prosperi found Plaintiff's abilities for fine and gross manipulation were unlimited, but she was limited to occasional overhead reaching bilaterally. (Tr. 214-15). She opined Plaintiff should avoid concentration exposure to extreme temperatures, humidity, and pulmonary irritants, as well as all exposure to hazards. (Tr. 215).

---

request for review. (Tr. 1-4). When the Appeals Council declines to review the ALJ's decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, the undersigned cannot consider these records as part of a substantial evidence analysis. The undersigned notes that Plaintiff does not request a Sentence Six remand for consideration of this new evidence. *See* Doc. 11, at 11.

In December 2014, Dr. White completed a physical medical source statement. (Tr. 716-18). In it, he indicated Plaintiff's diagnosis was "low back pain" and her prognosis was "stable". (Tr. 716). He listed a single symptom of lower back pain, and noted Plaintiff's impairments had lasted, or could be expected to last at least twelve months and that she was not a malingerer. *Id.* He indicated Plaintiff did not need an assistive device for occasional standing or walking. *Id.* Dr. White opined Plaintiff could stand and walk, or sit, for zero to two hours each in an eight-hour workday, and did not need to shift positions (sitting/standing/walking) at will. (Tr. 717). He opined Plaintiff could never lift any amount, nor could she twist, stoop, crouch/squat, or climb ladders/stairs. *Id.* He also opined Plaintiff had significant limitations with reaching, handing, and fingering, opining that she could use her hands (to grasp, turn, or twist objects), fingers (to perform fine manipulations), and reach (including overhead), for zero percent of an eight-hour workday. *Id.* Dr. White also indicated Plaintiff had anxiety and depression, which affected her physical condition. (Tr. 718). He opined her impairments as a whole were reasonably consistent with her symptoms and the functional limitations described. *Id.* He thought Plaintiff's pain and other symptoms were severe enough to "constantly" interfere with attention and concentration on even simple work tasks. *Id.* Dr. White indicated Plaintiff was incapable of even low stress jobs and would miss more than four days of work per month. *Id.*

In March 2015, state agency physician Eli Perencevich, D.O., reviewed Plaintiff's records and affirmed Dr. Prosperi's earlier opined limitations. (Tr. 231-33).

<u>VE Testimony</u>

A VE also appeared and testified at the hearing before the ALJ. (Tr. 194-98). The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and past work experience who was limited in the way in which the ALJ ultimately found. (Tr. 196-97). The VE

9

responded that such an individual could not perform Plaintiff's past work, but could perform other jobs such as packager, sorter, and inspector. (Tr. 197-98).

ALJ Decision

In his written decision, dated July 18, 2016, the ALJ found Plaintiff had not engaged in substantial gainful activity since her application date (June 12, 2014). (Tr. 132-33)[2]. He concluded Plaintiff had severe impairments of cervical and lumbar degenerative disc disease and osteoarthritis, status post L4-5 microdiskectomy; mild thoracolumbar scoliosis; asthma; sensorineural hearing loss with tinnitus; minimal left hip joint space narrowing and minimal arthritis of the hips; right knee degenerative joint disease, status post arthroscopic surgery; right shoulder degenerative joint disease with mild changes of acromioclavicular arthrosis; depression; and anxiety; but none of these impairments – individually or in combination – met or medically equaled the severity of a listed impairment. (Tr. 133-35). The ALJ then determined Plaintiff had the residual functional capacity:

> to perform light work as defined in 20 CFR 416.967(b) except: she can occasionally use right and left hand and foot controls. She can reach overhead with the right and left upper extremities occasionally, and in all other directions frequently. She can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and can occasionally balance, stoop, kneel, crouch, or crawl. In addition, she can never work at unprotected heights, or around moving mechanical parts, can occasionally operate a motor vehicle, and can occasionally work in conditions of humidity and wetness, in extreme heat or cold, in conditions where there are vibrations, and in conditions where there is concentrated exposure to dust, odors, fumes, or other pulmonary irritants. She is limited to working in environments with no more than a moderate level of noise. She is also limited to performing simple, routine and repetitive tasks, not at a production rate pace, e.g., no assembly line work, and she requires the ability to change positions every 30 minutes for 1-2 minutes in the immediate vicinity of the work station.

---

2. The ALJ found Plaintiff *had* engaged in substantial gainful activity from January 1, 2013 (her alleged onset date) through December 31, 2013 – a finding Plaintiff does not challenge. (Tr. 133).

(Tr. 137). The ALJ then determined Plaintiff was unable to perform any past relevant work, but (relying on the testimony of the VE), considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that she could perform, including inspector, sorter, and packager. (Tr. 149-50). Therefore, the ALJ determined Plaintiff was not disabled since June 12, 2014. (Tr. 150).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

11

than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises a single challenge to the ALJ's decision. She contends the ALJ erred when he failed to give controlling, or even great, weight to the opinion of Dr. White, Plaintiff's treating physician. The Commissioner responds, arguing the ALJ's determination regarding Dr. White's

12

opinion is supported by substantial evidence. For the reasons discussed below, the undersigned affirms the Commissioner's determination.

Treating Physician

ALJs must adhere to certain governing standards when assessing the medical evidence supplied in support of a claim. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242–43 (6th Cir. 2007) (citing SSR 96–2p, 1996 WL 374188); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Generally, treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone"; thus, their opinions are generally given more weight than those of non-treating physicians. *Rogers*, 486 F.3d at 242 (internal quotation omitted). Therefore, "if the opinion of the treating physician as to the nature and severity of a claimant's conditions is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record,' then it will be accorded controlling weight." *Id*. (quoting *Wilson*, 378 F.3d at 544); *see also* 20 C.F.R. § 416.927(c)(2).[3]

If a treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" as to the weight given instead. 20 C.F.R. § 416.927(c)(2). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear

---

3. Although recent revisions to the CFR have changed the rules regarding evaluation of treating physician opinions, such changes apply to claims filed after March 27, 2017, and do not apply to claims filed prior to that date. *See* Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5852-53, 2017 WL 168819. Plaintiff filed her claim in 2014 and thus the previous regulations apply.

to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting SSR 96–2p, 1996 WL 374188, at *5).

To demonstrate "good reasons," the ALJ must weigh certain factors (the *Wilson* factors) in determining how much weight to afford a treating physician's opinion. *See Wilson*, 378 F.3d at 544 (listing factors for the ALJ to consider to determine what weight is appropriate, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; the specialization of the physician; and any other relevant factors) (citing 20 C.F.R. § 404.1527(d)(2)). "A failure to follow the procedural requirement 'of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Rogers*, 486 F.3d at 243). Importantly, "good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242.

For the reasons discussed below, the undersigned finds the ALJ complied with these requirements, and provided the required good reasons to discount Dr. White's opinion. In his written opinion, the ALJ first summarized Dr. White's opinion, and then explained the weight assigned to it. *See* Tr. 248. In so doing, the ALJ considered the relevant factors of specialization, nature of treatment relationship, consistency, and supportability. And his findings are supported by substantial evidence.

First, the ALJ correctly noted that Dr. White, was a family physician, and was not a

14

specialist in Plaintiff's impairments involving her hip and back. (Tr. 148) ("Dr. White's opinion appeared to rest, at least in part, on an assessment of impairments that were outside his area of expertise. As a primary care physician, he did not have specialized knowledge compared to an orthopedic specialist or neurologist."). *See* 20 C.F.R. § 416.927(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). This does not mean – nor did the ALJ imply – that a family physician may not offer an opinion on such issues; it merely means Dr. White's opinion was not entitled to greater weight on this basis. *See Moore v. Astrue*, 2008 WL 4400685, at *5 (E.D. Ky) ("The regulations merely provide that a specialist is entitled to greater weight, not that a family practitioner is unqualified to offer an opinion regarding mental health issues."). However, as Dr. White specifically pointed out in his notes (and the ALJ noted), he was offering an opinion regarding impairments "treated by other doctors." (Tr. 734). This was thus one factor properly considered by the ALJ in assigning weight to Dr. White's opinion.[4]

Second, this, along with other records cited by the ALJ, also speaks to the supportability of Dr. White's opinion. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). The ALJ explained:

> Dr. White's treatment notes fail to reveal the significant clinical abnormalities one would expect to find if the claimant was truly as limited as indicated in his

---

4. Plaintiff "finds it ironic that the ALJ discredits Dr. White's opinion" on this basis, "when the opinions of the state agency physicians, to which the ALJ assigns great weight, are made by physicians who are clearly not specialists in the areas in which both rendered opinions." (Doc. 11, at 9). However, this was only one factor considered in the analysis of Dr. White's opinion, and the ALJ also explained he assigned greater weight to the state agency physician opinions because he found them "reasonable and consistent with the objective medical evidence." (Tr. 147).

15

> assessment at 12F and 16F, and Dr. White does not address this weakness. Dr. White's treatment notes reflect that in December 2014, when the claimant came to have disability forms completed due to right hip pain and back pain, which problems he noted were ''treated by other doctors'' (13F/16), Dr. White observed only that the claimant had no edema, and while she exhibited tenderness in her cervical, thoracic, and lumbar spine, and decreased range of motion of her lumbar spine (13F/16). [H]e also indicated that she had normal coordination (13F/16).

(Tr. 148). The ALJ specifically cited Dr. White's treatment note from the date Plaintiff saw him to fill out disability forms. *Id.* (citing Tr. 734). On that date, Dr. White noted a musculoskeletal examination revealed no edema, tenderness in Plaintiff's cervical, thoracic, and lumbar spine, and decreased range of motion in her lumbar spine. (Tr. 734). She also had normal coordination. *Id.* He provided no further detail, and listed diagnoses of hyperlipidemia, back pain, excessive sleepiness, and disc herniation. *Id.* At other visits both before and after the visit for disability forms, Dr. White noted on musculoskeletal examination that Plaintiff had a normal range of motion, with no edema or tenderness. *See* Tr. 711 (November 2014); Tr. 737 (December 2014); Tr. 732 (May 2015). Discounting a treating physician's opinion based on inconsistent contemporaneous treatment notes is appropriate. *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 177 (6th Cir. 2009) (finding treating physician rule not violated in part where: "the record also supports the ALJ's conclusion that [the treating physician's] opinion was inconsistent with his own prior assessments and treatment notes"); *Jackson v. Comm'r of Soc. Sec.*, 2016 WL 1211425, *6 (W.D. Mich.) ("This statement was inconsistent with...contemporaneous treatment notes that stated Plaintiff was 'doing very well' and was 'alert, cooperative, and oriented' with satisfactory memory."). At earlier visits, Dr. White assessed back pain and referred Plaintiff to pain management, neurosurgery, and orthopedics. *See* Tr. 701-02, 704, 705-06, 707, 511. However, Dr. White's notes frequently do not provide significant findings in support. *See* Tr. 702 (March 2014 – assessing "back pain", but listing no related physical findings); Tr. 704

(assessing back pain and disc herniation, and noting tenderness, decreased range of motion, pain, and spasm in Plaintiff's lumbar spine, as well as loss of muscle in Plaintiff's right thigh); Tr. 705 (May 2014 – noting decreased range of motion, tenderness, pain and spasm in Plaintiff's lumbar spine); Tr. 707 (July 2014 – no mention of musculoskeletal problems); Tr. 709 (August 2014 – assessing lumbar radicular pain, but no physical musculoskeletal findings); Tr. 510-11 (October 2014 – assessing back and hip pain, but no physical musculoskeletal findings). As described above, Dr. White suggested Plaintiff was severely limited in many areas – only capable of standing/walking or sitting for up to two hours, and could never lift and carry any amount of weight. (Tr. 717). The ALJ thus reasonably determined that Dr. White's "extreme limitations set forth in his opinions" were "inconsistent with his own relatively mild and benign exam findings." (Tr. 148). Further, the ALJ noted:

> [Dr. White's] assessment that [Plaintiff] cannot lift anything at all and can reach, handle, or finger zero percent of the time is grossly inconsistent with the totality of the evidence. As detailed herein, he noted on various occasions that the claimant exhibited normal range of motion and normal coordination. (13F).

(Tr.148). This again is a valid reason to assign less weight to Dr. White's opinions, as his treatment notes (and the record as a whole) fail to provide any basis for his opinion that Plaintiff could never use her hands, fingers, or arms. *See* Tr. 510-11, 701-13, 731-39.

Third, the ALJ found Dr. White's opinion "inconsistent with the record." (Tr. 148). Elsewhere in his opinion, the ALJ thoroughly evaluated the evidence of record and explained why he found it indicated Plaintiff was capable of a greater range of work than Dr. White opined. *See* Tr. 19-47 (summarizing medical record).

Plaintiff objects to the ALJ's statement that "it appears that Dr. White relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." (Tr. 148). Plaintiff

17

argues that the record shows gait difficulty, decreased range of motion, tenderness, and spasms, and positive straight leg raises and it is therefore "clear that the ALJ erred by not finding sufficient clinical findings to support Dr. White's opinion." (Doc. 11, at 10). The undersigned finds no error in the ALJ's statement. Although Plaintiff is correct that there are positive findings in the record, the ALJ's determination that the records did not show Plaintiff was as extremely limited as Dr. White opined is supported by substantial evidence as described above. *See Jones*, 336 F.3d at 477 (even if substantial evidence or a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ"). Given the lack of extreme physical findings in Dr. White's own treatment notes to support such extreme opined limitations, it was reasonable for the ALJ to surmise that such limitations were based (at least in part) on Plaintiff's subjective statements.

The undersigned therefore finds that the ALJ provided the required good reasons for discounting Dr. White's opinion. The reasons provided are "sufficiently specific to make clear" to this Court "the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight", *Rogers*, 486 F.3d at 242, and those reasons are supported by substantial evidence as detailed above.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI supported by substantial evidence and affirms that decision.

       s/James R. Knepp II
       United States Magistrate Judge